UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

===============================================================

Michael J. Raffe,

                                        Plaintiff,

            -v.-                                        5:08-cv-00211

American National Red Cross, American
National Red Cross of Tompkins County,
and Jennifer Yarbrough,

                                        Defendants.

===============================================================

APPEARANCES

WIGGINS & KOPKO, LLP                EDWARD E. KOPKO, ESQ.
*Attorneys for Plaintiff*
308 North Tioga Street
Ithaca, NY 14850

EPSTEIN BECKER & GREEN, P.C.        KENNETH W. DIGIA, ESQ.
*Attorneys for Defendants*          ERIC B. TOPEL, ESQ.
250 Park Avenue                     LAURI FAITH RASNICK, ESQ.
New York, NY 10177

Neal P. McCurn, Senior District Judge

### *Memorandum, Decision, and Order*

## *I.  Introduction*

Presently before the Court is a motion by defendants for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Plaintiff opposes the

motion.  Decision on the pending motion is based entirely on the submitted papers, without oral argument.  For the reasons that follow, the motion is denied in part and granted in part.

## II.  Background

Unless otherwise noted, the following is undisputed.

Plaintiff Michael J. Raffe ("Raffe") brings this action against defendants American National Red Cross ("Red Cross"), American Red Cross of Tompkins County ("Chapter"), and Chapter Executive Director Jennifer Yarbrough ("Yarbrough") (collectively "Defendants").[1]  This action was removed to this court from the Supreme Court of the State of New York in Tompkins County.

The Red Cross "is a charitable organization as described in section 501(c)(3) of the United States Internal Revenue Code."  Decl. of Michael Yehl, Feb. 15, 2010, ¶ 2, Dkt. No. 43 ("Yehl Decl.").  The organization is a "humanitarian organization led by volunteers," that "provides relief to victims of disasters and helps people prepare for, prevent, and respond to emergencies."  Id. The Chapter "provides emergency services to the greater Ithaca, New York community."  Id. ¶ 3.

The Chapter hired Raffe to serve as the Director of Emergency Services in December 1997.  See Aff. of Michael Raffe, Apr. 30, 2010, ¶ 5, Dkt. No. 58

---

[1]  The summons filed in state court prior to the removal of the action to this court included Lauren Signer, wife of Michael J. Raffe, as a plaintiff.  See Summons to Defendants, Ex. A to Dkt. No. 2.  However, the Complaint does not list Lauren Signer as a plaintiff in the caption, nor does the Complaint include any allegations that she suffered any harm.  See Compl., Dkt. No. 6.  Accordingly, Lauren Singer is not a plaintiff to this action, nor will she be treated as such.

("Raffe Aff.").[2]  Raffe was suspended, without pay, from his position on January 17, 2008.  See Ex. A to Decl. of Jennifer Yarbrough, Feb. 16, 2010, Dkt. No. 41-3 ("Yarbrough Decl.").  This suspension was to remain in effect until January 26, 2008.  Id.  Raffe's employment with the Chapter was terminated on January 28, 2008.  See Yarbrough Decl. ¶ 35.

Raffe alleges that Defendants violated New York Executive Law § 296 ("Human Rights Law" or "NYHRL") by terminating his employment because of his age.  Compl. ¶¶ 20-21.  Raffe also alleges that Defendants violated various provisions of the New York Labor Law, including section 191 by failing to pay wages "not later than the regular pay date for the pay period which the termination occurred," section 195 by failing to notify Raffe with written notice of the exact dates of termination and cancellation of employee benefits within five days of his termination, and section 198-c by failing to pay "benefits or wage supplements."  Compl. ¶¶ 27, 29-31, 36.  Finally, Raffe alleges that Defendants violated 29 U.S.C. §§ 201-219 ("Fair Labor Standards Act" or "FLSA") by failing to provide overtime compensation.  Compl. ¶ 48.

### III.  Discussion

#### A.  Summary Judgment Standard

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The movant has the initial burden to show why it is entitled to summary judgment.  See Salahuddin v. Goord,

---

[2]  Defendants state that Raffe was actually hired in January 1998.  See Decl. of Charles Nocera, Feb. 16, 2010, ¶ 3, Dkt. No. 40 ("Nocera Decl.").  Because neither party has submitted any documents to verify the hiring date, the Court will construe the ambiguity in Raffe's favor.

467 F.3d 263, 272 (2d Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986)). If the movant meets its burden, the burden shifts to the non-movant to identify evidence in the record that creates a genuine issue of material fact. See id. at 273 (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348 (1986)). A party's factual assertions must be supported by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1).

When deciding whether a material issue of fact is in dispute, the court is cognizant that "[a] fact is material when it might affect the outcome of the suit under governing law." Tracy v. Freshwater, 623 F.3d 90, 95 (2d Cir. 2010) (internal citation omitted). Also, a material fact is genuinely in dispute "if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Bessemer Trust Co., N.A. v. Branin, 618 F.3d 76, 85 (2d Cir. 2010) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986)).

"In ruling on a motion for summary judgment, the district court may rely on any material that would be admissible or usable at trial." Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir. 2008) (internal quotation and citation omitted). When deciding a motion for summary judgment, the court

must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor.  Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598 (1970)).  However, a properly supported summary judgment motion "will not be defeated merely upon a 'metaphysical doubt' concerning the facts . . . or on the basis of conjecture or surmise."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., 475 U.S. at 586)).

### B.  New York Human Rights Law

The New York Human Rights Law, which is codified in the state's Executive Law, prohibits an employer from terminating an employee because of his or her age.  See N.Y. EXEC. LAW § 296(3-a)(a).  Despite some differences between the state law and the federal Age Discrimination in Employment Act ("ADEA"), "age discrimination suits brought under the [NYHRL] are subject to the same analysis as claims brought under the ADEA."  Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) (citation omitted).  As such, NYHRL age discrimination claims, like ADEA claims, are analyzed "under the same burden shifting framework as claims brought pursuant to Title VII of the Civil Rights Act of 1986, as amended, 42 U.S.C. § 2000e, et. seq."  Id. (citation omitted); see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817 (1973).

Under McDonnell Douglas, a plaintiff bears the initial burden of establishing a prima facie case for age discrimination.  Abdu-Brisson, 239 F.3d at 467.  To meet this burden, the plaintiff must show that: "(1) he is a member of the protected class; (2) he is qualified for his position; (3) he has suffered an adverse employment action; and (4) the circumstances surrounding that action give rise to

an inference of age discrimination."  Id. at 466-67 (citations and footnote
omitted).[3]  "A plaintiff's burden of establishing a *prima facie* case is *de minimis*,"
and the "requirement is neither onerous . . . nor intended to be rigid, mechanized
or ritualistic."  Id. at 467 (citations omitted).

　　After the plaintiff establishes a *prima facie* case of age discrimination, the
defendant "may rebut it by articulating legitimate and non-discriminatory reasons
for the adverse employment action."  Id. at 468-69.  A defendant meets this burden
"if he presents reasons that, 'taken as true, would permit the conclusion that there
was a nondiscriminatory reason for the adverse action.'"  Id. (quoting St. Mary's
Honor Ctr. v. Hicks, 509 U.S. 502, 509, 113 S. Ct. 2742 (1993)).

　　If the defendant meets his burden of articulating a legitimate and non-
discriminatory reason for the adverse employment action, "the presumption of age
discrimination dissolves, and the burden shifts back to the plaintiff to prove that

---

　　[3]  In their memorandum of law, Defendants contend that the second element of a claim
for age discrimination is satisfactory job performance instead of being qualified for the position,
citing  Norville v. Staten Island University Hospital, 196 F.3d 89, 96-97 (2d Cir. 1999) for
support.  See Defs.' Mem. of Law at 7-8, Dkt. No. 45.  Defendants, however, have misstated the
elements as they are listed in Norville.  In both Norville and Abdu-Brisson, the second element
requires a showing that the plaintiff is qualified for the position.  Abdu-Brisson, 239 F.3d at 466;
Norville, 196 F.3d at 96.  Satisfactory job performance is the second element of an employment
discrimination claim  under Title VII of the Civil Rights Act, but not under the ADEA.  See
Boyce v. Bank of N.Y., 226 F. App'x 17, 18 (2d Cir. 2006) (listing the elements under both Title
VII and ADEA claims).  In age discrimination claims, assuming that a plaintiff meets his initial
burden, a showing by the defendant that the plaintiff did not perform his job satisfactorily may
articulate a legitimate, nondiscriminatory reason for dismissal.  See Cross v. N.Y. City Transit
Auth., 417 F.3d 241, 250 (2d Cir. 2005).  See also Slattery v. Swiss Reinsurance Am. Corp., 248
F.3d 87, 91-92 (2d Cir. 2001) ("[A] mere variation in terminology between 'qualified for the
position' and 'performing . . . satisfactorily' would not be significant so long as, in substance, all
that is required is that the plaintiff establish basic eligibility for the position at issue, and not the
greater showing that he satisfies the employer.  The qualification prong must not . . . be
interpreted in such a way as to shift onto the plaintiff an obligation to anticipate and disprove, in
his *prima facie* case, the employer's proffer of a legitimate, non-discriminatory basis for its
decision.").

the employer's stated reason is merely pretextual and that age discrimination was the true reason for the adverse employment action." Id. at 466.

Finally, although McDonnell Douglas requires a fact-intensive inquiry, "[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." Id.

As noted above, under McDonnell Douglass, the Court must first determine if Raffe has established a *prima facie* case for age discrimination. Defendants acknowledge that Raffe is a member of a protected age group (first element), and that Raffe suffered an adverse employment action (third element). See Defs.' Mem. of Law at 8, Dkt. No. 45. The remaining issues in the first step are whether Raffe was qualified for the position (second element) and whether Raffe was terminated under circumstances giving rise to the inference of discrimination (fourth element). The Court will discuss these two issues in turn.

### 1.  Whether Raffe Was Qualified For the Position

"[T]he qualification necessary to shift the burden to defendant for an explanation of the adverse job action is minimal; plaintiff must show only that he 'possesses the basic skills necessary for performance of [the] job.'" Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 92 (2d Cir. 2001) (quoting Owens v. New York City Hous. Auth., 934 F.2d 405, 409 (2d Cir. 1991)). "[W]here discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw." Id. (citing Gregory v. Daly, 243 F.3d 687, 696 (2d Cir. 2001)).

Defendants did not discuss whether Raffe was qualified for the position. Raffe states that he had been working "at the Chapter for over ten years" at the time of his termination. Raffe Aff. ¶ 157. There is nothing in the record to call

Raffe's qualifications into question.

Thus, the Court finds that Raffe has satisfied the second element of a *prima facie* case for job discrimination.

### *2.  Whether Raffe's Termination  Occurred Under Conditions Giving Rise To The Inference Of Discrimination*

There are a number of ways for a plaintiff to establish "the inference of discriminatory intent necessary to complete the prima facie case." Abdu-Brisson, 239 F.3d at 468.  Such ways include—but are not limited to—

> a showing of disparate treatment[;] . . . the employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position; or the employer's criticism of the plaintiff's performance in . . . degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.

Id. (internal quotation marks and citations omitted).

Raffe argues that an inference of discrimination arises from statements that Cynthia Gordineer ("Gordineer") allegedly made regarding staff "longevity." Raffe's Mem. of Law at 8, Dkt. No. 62.  Gordineer currently serves as the Chief Executive Officer of the [Red Cross's] Southern Tier Chapter, and she simultaneously served as Interim Executive Director of Tompkins Red Cross from May 2007 to December 2007.  See Decl. of Cynthia Gordineer, Feb. 15, 2010, ¶¶ 1, 4, Dkt. No. 42.  At a May 2007 staff meeting, Gordineer allegedly said that "longevity in one place was not a good thing."  Dep. of Michael J. Raffe, May 11, 2009, at Ex. A to Decl. of Eric B. Topel, Feb. 17, 2010, at 180, Dkt. Nos. 39 and

8

39-1("Topel Decl."). At another senior staff meeting on June 11, 2007, Gordineer purportedly repeated that "longevity" was "not a good thing" because it breeds "complacency." Aff. of Michele VanOrman, Apr. 30, 2010, ¶ 9, Dkt. No. 56-1; at Ex. 2 to Decl. of Edward E. Kopko, Apr. 30, 2010, Dkt. No. 56 ("Kopko Decl."); Aff. of Cheryll Vosburgh, Apr. 29, 2010, ¶ 4, Dkt. No. 56-2, at Ex. 3 to Kopko Decl.

Gordineer neither denies nor admits making these statements. Because all factual ambiguities must be construed in Raffe's favor, the Court will assume that Gordineer made these statements. The Court, however, must still determine whether such statements raise an inference of discrimination.

"'[R]emarks made by decisionmakers that could be viewed as reflecting a discriminatory animus' may 'give rise to an inference of discriminatory motive.'" Gregory v. Daly, 243 F.3d 687, 697 (2d Cir. 2001) (quoting Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 91 (2d Cir. 1996)). But "the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination." Tomassi v. Insignia Fin. Group, Inc., 478 F.3d 111, 115 (2d Cir.2007). "For example, remarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark." Id. (citing Ostrowski v. Atl. Mut. Ins. Co., 968 F.2d 171, 182 (2d Cir.1992)). However, rather than giving each remark an individual evaluation pertaining to a protected class and disregarding them if they are merely "stray" or "inoffensive," courts should determine whether the remarks "suggest that discrimination motivated a particular employment action." Id. at 116.

9

Statements regarding employee longevity alone are insufficient to raise an inference of discrimination.  See Hazen Paper Co. v. Biggins, 507 U.S. 604, 611, 113 S. Ct. 1701 (1993).  "Because age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age based.'"  Id.  Remarks similar to those purportedly made by Gordineer are insufficient to show an inference of discriminatory animus.  See, e.g., Revere v. Bloomingdale's, Inc., No. 03 CV 5043, 2006 WL 3314633, at *3, 6 (E.D.N.Y. Nov. 14, 2006) (a company president's statements that "we need some 'fresh blood' in the company," that "we need new and fresh ideas," that "longer service employees were 'complacent' and 'not as motivated as new employees[,]' and that longer service employees were not 'keeping up with the times'" did not infer discrimination, and that plaintiff, in relying on such remarks, "erroneously equate[d] long service with age"); Veleanu v. Beth Isr. Med. Ctr., No. 98-7455, 2000 WL 1400965, at *5 (S.D.N.Y. Sept. 25, 2000) (comment referring to "fresh blood" that was directed to length of tenure, which could apply with equal force to employees under age forty, is age-neutral).

Even remarks that are directly related to age may not evince discriminatory animus.  See, e.g., Iuorno v. DuPont Pharms. Co., 129 F. App'x 637, 641-42 (2d Cir. 2005) (a supervisor's "stray remark" that the plaintiff was old enough to be a younger employee's "mother" was "insufficient to support an inference of age discrimination"); Criley v. Delta Air Lines, 119 F.3d 102, 105 (2d Cir. 1997) (an airline's "concerns about the economics of hiring pilots approaching mandatory retirement were not discriminatory within the meaning of the ADEA, even though their retirement was required by law at a specified age, and not determined by

years of service or some other yardstick").[4]

Aside from being insufficient to raise an inference of discriminatory animus, Gordineer's purported statements were made six to seven months before Raffe suffered any adverse employment action, and there is nothing in the record to indicate that they were directed at Raffe.  Moreover, Gordineer merely concurred with Yarbrough's decision to terminate Raffe's employment, and did not make the decision herself.  See Yarbrough Decl. ¶ 34; Dep. of Cynthia Gordineer, Nov. 17, 2009, 113, at Ex. C to Topel Decl., Dkt. No. 39-3.  A statement relating to longevity that was not made by the individual who took the adverse employment action and that was not directed at the employee who suffered the adverse employment is insufficient to raise an inference of discriminatory animus.

Raffe relies on Gregory v. Daly, 243 F.3d 687 (2d Cir. 2001), for the proposition that Gordineer's statements give rise to an inference of discrimination. This reliance is misplaced.  In Gregory, the plaintiff-employee alleged sex discrimination, id. at 689, and not age discrimination as is the case here.

---

[4]  On the other hand, remarks regarding age may be sufficient to raise an inference of discrimination where they are also accompanied by other occurrences that show discriminatory animus, which is not the case here.  See, e.g., Abdu-Brisson, 239 F.3d at 468 (defendants "made numerous comments about the age of the . . . pilot force, referring to them as 'contaminated' and 'Bad Apples,'" and defendants had an "all-consuming interest in the age and projected retirement rates of [the] pilots"); Nembhard v. Mem'l Sloan Kettering Cancer Ctr., 104 F.3d 353, 1996 WL 680756, at *3-4 (2d Cir. 1996) (plaintiff replaced by a younger individual and supervisor had referred to plaintiff as an "'old, black guy' she was trying to get rid of," told plaintiff "that only older people tended to accumulate sick time," and rebuffed plaintiff's request for computer training by saying that "younger staff would train on computers"); Woroski v. Nashua Corp., 31 F.3d 105, 108 (2d Cir. 1994) (manager purportedly said "on many occasions" that the "salary work force[] was older, had been around too long, made too much money and enjoyed too many benefits" and that "what this company needed was new younger people, perhaps people out of college . . . that were younger, more aggressive, hungrier, that would have come and not had six weeks vacation . . . and in fact could be hired for" a substantially lower salary).

Moreover, the statements at issue in Gregory referred to "women as easy victims of sexual assault" and the statements were "generally demeaning" to women. Id. at 694. Finally, those statements were made by the defendant who withheld raises from the plaintiff and ultimately fired her. Id. at 693. Here, the purported statements about "longevity" and "complacency" do not directly refer to Raffe's age, and they are alleged to have been made not by Yarbrough—who made the decision to terminate Raffe's employment—but by Gordineer, who merely concurred with Yarbrough's decision. Yarbrough Decl. ¶ 34; Gordineer Dep. at 113. Such "stray" remarks are insufficient to raise an inference of discriminatory animus.

As such, the Court concludes that Raffe has failed to establish the fourth element of a *prima facie* case for age discrimination, which is that he was terminated under circumstances giving rise to the inference of discrimination. Because Raffe has failed to meet his initial burden, the Court need not determine whether Defendants had a legitimate, nondiscriminatory reason for terminating Raffe's employment, or whether such a reason was a mere pretext for discrimination. See, e.g., Woodman v. WWOR-TV, Inc., 411 F.3d 69 (2d Cir. 2005) (affirming a grant of summary judgment because plaintiff failed to meet his initial burden of establishing a *prima facie* case of age discrimination).

Accordingly, Defendants' motion for summary judgment as to Raffe's age discrimination claim under New York Human Rights Law § 296 is granted, and this claim is dismissed.

### *C. New York Labor Law*

Raffe alleges that Defendants violated New York Labor Law §§ 191, 195, and 198-c. Compl. ¶¶ 30-31, 36. Those sections govern the payment of wages to

an employee, and each will be addressed in turn.

### *1. Section 191*

Raffe alleges that Defendants violated Labor Law § 191 because they failed to pay him "not later than the regular pay day for the pay period during which the termination occurred."  Compl. ¶ 30.

Section 191 states in pertinent part:  "A clerical and other worker shall be paid [by his employer] the wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer."  N.Y. LAB. LAW § 191(1)(d).  It further provides:  "If employment is terminated, the employer shall pay the wages not later than the regular pay day for the pay period during which the termination occurred, as established in accordance with the provisions of this section.  If requested by the employee, such wages shall be paid by mail."  Id. § 191(3).

Defendants argue that Raffe "was paid all wages and supplements and benefits that was owed and he has failed to produce any evidence or testify to the contrary."  Defs.' Mem. of Law at 25.  Yarbrough states that the "Chapter's records indicated that [Raffe] was paid all compensation and benefits to which he was entitled to upon termination."  Yarbrough Decl. ¶ 37.  Raffe states that he has not been paid "all the compensation and benefits to which [he] was entitled upon [his] termination."  Raffe Aff. ¶ 130.  The parties' contrary statements create an issue of fact that could have been resolved by documentary evidence.  Raffe has requested the Chapter's records regarding compensation.  See Ex. 4 to Raffe Aff., at 43, Dkt. No. 58-4.  It is unclear, however, if these records were ever produced as they have not been made a part of the record.  Thus, an issue of fact remains regarding whether Defendants complied with section 191 by providing Raffe all

compensation to which he was entitled.[5]

Accordingly, Defendants' motion for summary judgment as to Raffe's claims arising under New York Labor Law § 191 is hereby denied.

### *2. Section 195*

Defendants allegedly violated Labor Law § 195(6) by failing to notify Raffe "in writing within five days of the exact date of termination and the exact date of cancellation of employee benefits."  Compl. ¶ 36.

Labor Law § 195 states in pertinent part:

> Every employer shall . . . notify any employee terminated from employment, in writing, of the exact date of such termination as well as the exact date of cancellation of employee benefits connected with such termination.  In no case shall notice of such termination be provided more than five working days after the date of such termination.

N.Y. LAB. LAW § 195(6).

Defendants have produced the termination letter that Yarbrough gave to Raffe on January 28, 2008.  See Ex. F to Yarbrough Decl., Dkt. No. 41-6.  This letter stated that the termination was "effective, January 28, 2008."  Id.  Raffe admits to receiving this letter on that date and admits that he was terminated on January 28, 2008.  See Raffe's 7.1 Statement at 23.  Thus, Defendants complied with section 195(6)'s requirement that Raffe receive written notification of his

---

[5]  It should also be noted that Yarbrough states that Raffe was not paid for "unused sick or personal days" because Chapter policy does not provide for such compensation upon an employee's termination.  Yarbrough Decl. ¶ 38.  Raffe has admitted to this statement.  See Raffe's 7.1 Statement at 24.  Raffe further contends that he "was denied benefits he was otherwise entitled to" because of the "sham discharge," and that this "sham discharge was designed to avoid having the Chapter pay Raffe what Raffe was actually due."  Id. at 84 (citing Raffe Aff. ¶ 229).  Regardless, even if the discharge were a "sham," there is nothing in that statement to raise an issue of fact as to whether the Chapter's policy permits the payment of unused sick or personal days upon an employee's termination.

termination within five business days of the termination.

The Letter of Termination also references a "Severance Agreement and General Release ('Agreement') delineating the terms of [the] separation" that was provided to Raffe along with the Letter of Termination. Ex. F to Yarbrough Decl., Dkt. No. 41-6. Raffe was to sign and return the Agreement to Yarbrough by February 18, 2008. Id. According to the Letter of Termination, Raffe's failure to sign and return the Agreement or revoke the Agreement will result in the Agreement being deemed "null and void." Id. Unfortunately, this Agreement has not been made a part of the record, and thus, it is unknown if it provided Raffe with notice of the "exact date of cancellation of employee benefits" as required by section 195(6). Whether the deadline contained in the Letter of Termination serves as written notice of the "exact date of cancellation of employee benefits" is an issue of fact to be resolved by a jury.

Accordingly, Defendants' motion for summary judgment as to Raffe's claim arising under New York Labor Law § 195(6) is denied.

### *3. Section 198-c*

Raffe also brings a claim under New York Labor Law § 198-c, alleging that Defendants failed to pay him "benefits and wage supplements." Compl. ¶¶ 27, 31. Under New York law:

> [A]ny employer who is party to an agreement to pay or provide benefits or wage supplements to employees . . . and who fails, neglects or refuses to pay the amount or amounts necessary to provide such benefits or furnish such supplements within thirty days  after such payments are required to be made, shall be guilty of a misdemeanor[.]

N.Y. Lab. Law § 198-c(1).

Section 198-c, however, is a criminal statute and does not provide for a civil

cause of action.  See Ramos v. SimplexGrinnell LP, — F. Supp. 2d —, —, No. 07-CV-981, 2011 WL 2471584, at *19 (E.D.N.Y. Jun. 21, 2011) (citing Moran v. GTL Const., LLC, No. 06-Civ.-168, 2007 WL 2142343, at *5 (S.D.N.Y. July 24, 2007).  See also Hammell v. Banque Paribas, 780 F. Supp. 196, 200–01 (S.D.N.Y.1991) (noting that the New York Court of Appeals affirmed a Fourth Department decision holding that there is no private civil action available under § 198–c) (citing Stoganovic v. Dinolfo, 461 N.Y.S.2d 121, 92 A.D.2d 729 (N.Y. App. Div. 1983), aff'd 61 N.Y.2d 812, 813 (1984))).  But see Castagna v. Luceno, No. 09-CV-9332, 2011 WL 1584593, at *21 (S.D.N.Y. Apr. 26, 2011) (noting that there is "conflicting case law" whether § 198–c provides a private right of action and ultimately permitting plaintiff's § 198 claim to proceed).

As such, Defendants motion for summary judgment as to Raffe's claim arising from New York Labor Law section 198-c is granted, and this claim is dismissed.

### D.  Federal Fair Labor Standards Act[6]

Raffe alleges that Defendants violated the Fair Labor Standards Act by failing to provide him with the overtime pay to which he was entitled.  Compl. ¶¶

---

[6] In his memorandum of law in opposition to Defendants' summary judgment motion, Raffe contends that Defendants also violated New York's laws and regulations requiring overtime compensation.  See Raffe's. Mem. of Law at 10-11, Dkt. No. 62.  See also N.Y. Labor Law §§ 650-665; 12 N.Y.C.R.R. § 142-2.2.  The Complaint, however, did not include claims for overtime compensation pursuant to New York's laws or regulations.  Where Raffe asserted Labor Law violations, he alleged only violations of section 191, 195 and 198-c.  The Complaint did not invoke either Labor Law §§ 650-665 or 12 N.Y.C.R.R. § 142-2.2, both of which govern the payment of overtime.  Accordingly, the Court will not consider any claim for overtime compensation that Raffe seeks under either the New York Labor Law or New York State Department of Labor regulations.  See Lyman v. CSX Transp., Inc., 364 F. App'x 699, 701 (2d Cir. 2010) ("An opposition to a summary judgment motion is not the place for a plaintiff to raise new claims.").

39-52.  Defendants proffer two arguments in support of their summary judgment motion regarding this claim: (1) Plaintiff's claim is barred by the statute of limitations; and (2) Plaintiff is not entitled to overtime pay because he qualifies as an exempt administrative employee.

### *1.  Timeliness of the FLSA Claim*

The statute of limitations for a claim for overtime compensation under the FLSA is two years after the claim accrues, or in the case of a willful FLSA violation, within three years following accrual.  See 29 U.S.C. § 255(a).  A violation is willful if a plaintiff shows that "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 141 (2d Cir. 1999) (quoting McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S. Ct. 1677(1988)).  "[A] cause of action under the Fair Labor Standards Act for . . . unpaid overtime compensation . . . 'accrues' when the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends."  29 C.F.R. § 790.21(b).

"A federal court must honor state court rules governing commencement of civil actions when an action is first brought in state court and then removed to federal court, even though the cause of action arises from federal law."  Winkels v. George A. Hormel & Co., 874 F.2d 567, 570 (8th Cir. 1989) (citing Herb v. Pitcairn, 324 U.S. 117, 120, 65 S. Ct. 459 (1945) (whether case is pending in state court for the purpose of tolling a federal statute of limitations is determined by state law)).  See also Gorwin v. Local 282, I.B.T., 838 F. Supp. 116, 121 (S.D.N.Y. 1993); Juliano v. Stroehmann Bakeries, Inc., 734 F. Supp. 595, 598, (W.D.N.Y. 1990).

Raffe began working at the Chapter in December 1997.  See Raffe Aff. ¶ 5. This case was removed to this court on February 22, 2008, after the Chapter was served with a Summons with Notice pursuant to the New York State Civil Procedure and Rules on January 25, 2008.[7]  See Notice of Removal, Dkt. No. 1.

Raffe has made no showing that Defendants willfully violated the FLSA.  In fact, he fails to respond to the statute of limitations issue altogether.  As such, all claims for overtime compensation that accrued before January 25, 2006 are time barred.  But because some of the claims for overtime might have occurred within the applicable statute of limitations, the Court will determine whether Raffe is exempt from FLSA requirements.

### 2.  *The Administrative Exemption*

Under the FLSA, an employee who has worked for more than forty hours per week is entitled to overtime pay from his employer.  29 U.S.C. § 207(a)(1). But "any employee employed in a bona fide executive . . . capacity" is exempt from the FLSA's overtime requirements.  29 U.S.C. § 213(a)(1).  The United States Department of Labor has promulgated regulations to help determine whether an employee is exempt from the FLSA's requirements.  Donovan v. Burger King Corp., 675 F.2d 516, 517-18 (2d Cir. 1982).

Defendants argue that Raffe "qualifies as an exempt administrative employee."  Defs.' Mem. of Law at 17.  To qualify for the administrative exemption, the employee must satisfy three conditions.  First, the employee must earn at least $455 per week, excluding board, lodging or other facilities.  29 C.F.R. § 541.200(a)(1).  Second, the employee's "primary duty" must be "the

---

[7]  Under New York law, a claim may be commenced in state court with the filling of a Summons with Notice.  N.Y. C.P.L.R. 304(a).

performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers." Id. § 541.200(a)(2).  Finally, the employee's "primary duty" must also "include[] the exercise of discretion and independent judgment with respect to matters of significance." Id. § 541.200(a)(3).  Defendants, as the employer invoking the exemption, "bear[] the burden of establishing that [Raffe] falls within the exemption." Mullins v. City of New York, 653 F.3d 104, 113 (2d Cir. 2011).

Raffe does not dispute that he meets the salary requirement. See Raffe's Mem. of Law at 12.  Thus, the Court will discuss the remaining two elements in turn.

### *a.  Whether Raffe's Primary Duties Were Directly Related To The Management Or General Business Operations Of The Chapter*

Federal regulations define "primary duty" as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a).  "To determine whether [a] plaintiff['s] performance of these exempt activities constitutes [his] 'primary duty,' a court must consider 'the character of an employee's job as a whole.'" Mullins, 653 F.3d at 106.

> Factors to consider . . . include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700(a).

To meet the "directly related to the management and general operations" requirement, the plaintiff "must perform work directly related to assisting with the

running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a).  Such work

> includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations; government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

Id. § 541.201(b).  A plaintiff may also qualify for this exemption if his "primary duty is the performance of work directly related to the management or general business operations of the employer's customers."  Id. § 541.201(c).

It is undisputed that the Red Cross "is a charitable organization" that "provides relief to victims of disasters and helps people prepare for, prevent, and respond to emergencies."  Yehl Decl. ¶ 2.  The organization's Tompkins County Chapter "provides emergency services to" Ithaca and its surrounding communities. Id. ¶ 3; Raffe's 7.1 Statement at 2.  Raffe admits to being "responsible for almost every aspect of the Chapter's involvement with disaster services," including managing and monitoring delivery of services to "five different program areas encompassing" forty-five volunteers and "serving . . . 3,000 community residents." Ex. F to Topel Decl., Dkt. No. 39-6; Raffe's 7.1 Statement at 30.  He further admits that his "duty to make sure that the Red Cross responded during a disaster was a significant responsibility" that was "at the core [of the Red Cross's] mission."  Dep. of Cheryll Vosburgh, May 13, 2009, 29-30, at Ex. D to Topel Decl., Dkt. No. 39-4 ("Vosburgh Dep."); Raffe's 7.1 Statement at 30.  Raffe

admits to having a role in formulating and revising the Chapter's disaster and emergency response plans.  See Nocera Decl. ¶¶ 15-16; Ex. F to Topel Decl.; Raffe's 7.1 Statement at 36-37.

Additionally, Raffe has admitted to "overseeing the entire [Emergency Services] Department," which was comprised of "approximately [forty-five] volunteers and the [Board of Directors'] Emergency Services Committee," and "had responsibility for managing the day-to-day emergency and disaster services of the chapter."  Nocera Decl. ¶ 7; Raffe's 7.1 Statement at 31.  Raffe states that he was not the "sole supervisor" of the volunteers.  Raffe Aff. ¶ 165.  That contention, however, is immaterial because the administrative exemption is satisfied "even if the employee does not have direct supervisory responsibility over the other employees on the team."  29 C.F.R. § 541.203(c).

Finally, Raffe also admits to "act[ing] as the 'face' of the Chapter to the community, volunteers, and clients."  Nocera Decl. ¶ 22; Raffe's 7.1 Statement at 38.  This responsibility included "establish[ing] and maintain[ing] effective working relationships with appropriate government agencies and other community and volunteer organizations concerned with disaster relief."  Nocera Decl. ¶ 22; Raffe's 7.1 Statement.

Despite admitting to carrying out all those duties, Raffe argues that he "was working toward fulfilling a customer's need for a service, rather than . . . performing administrative duties."  Raffe's Mem. of Law at 14-15.  He states that his "daily tasks ensured that Red Cross services were delivered timely and efficiently."  Id.  Raffe then attempts to analogize his daily duties to those that were at issue in Relyea v. Carman, Callahan and Ingham, L.L.P., No. 03 Civ. 5580, 2006 WL 2577829, at *1 (E.D.N.Y. Sept. 6, 2006).  In Relyea, real estate

closers who were employees of a law firm's closing department sought overtime pay from the law firm, but the law firm claimed that they were exempt administrative employees.  Id.  The real estate closers' duties included "preparing documents prior to closings, overseeing and attending closings, distributing checks at the closing, and completing closing documents after closings[;] . . . recognizing deficiencies before closing . . . and then consult[ing] an attorney; determining whether" all required conditions were met before a closing; "attending most closings, on their own; and exercising their discretion to disburse the checks to the parties" at the closing if all "prerequisites" were met and "paperwork" completed.  Id.  The court found there that the real estate closers' duties required them to "appl[y] existing policies and procedures on a case-by-case basis," rather than "the crafting of those policies . . . ."  Id. at *5.  The court, thus concluded that they were "better described as 'production,' rather than administrative workers."  Id.

Certainly, Raffe's duties included ensuring that the emergency services needs of the Red Cross's and the Chapter's "customers" were met.  But Raffe's responsibilities also included managing the Emergency Services Department's operations, supervising the department's volunteers, allocating the department's resources, authorizing the department's expenditures, promoting the department's services, formulating the department's operation and emergency response policies, and representing the Red Cross at various events.  Those myriad duties go significantly further than merely producing the Red Cross's services for its customers.

Accordingly, the Court finds that Defendants have met their burden of showing that Raffe's primary duties were directly related to the management or

general business operations of the Chapter, and no that reasonable jury could find otherwise.  Raffe has not raised a genuine issue of material fact sufficient to overcome Defendants' summary judgment motion.  Thus, the second element of the administrative exception has been satisfied as a matter of law.

### b.  Whether Raffe's Primary Duties Included The Exercise Of Discretion And Independent Judgment With Respect To Matters Of Significance

"The term 'matters of significance' refers to the level of importance or consequence of the work performed.'" 29 C.F.R. § 54.202(a).  Additionally, the "phrase 'discretion and independent judgment' must be applied in the light of all the facts involved in the particular employment situation in which the question arises."  Id. § 541.202(b).  Factors to consider in making this determination

> include, but are not limited to: whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the

23

> company in handling complaints, arbitrating disputes or
> resolving grievances.

Id. "Federal courts generally find that employees who meet at least two or three of these factors are exercising discretion and independent judgment . . . ." 69 Fed. Reg. 22122, 22143 (Apr. 23, 2004).

Raffe admits to having significant budgetary and fiscal responsibilities, including reallocation of emergency services funds, submitting grant applications, handling procurement, overseeing equipment and inventory, and authorizing purchases. See Nocera Decl. ¶ 12; Raffe's 7.1 Statement at 34-35. He also admits to developing and evaluating the Chapter's Continuity of Operations Plan. See Nocera Decl. ¶ 16; Raffe's 7.1 Statement at 37. Despite these admissions, Raffe argues that he "used his knowledge, experience and skills to make 'simple decision[s]' when providing services mandated by the Red Cross." Raffe's Mem. of Law at 16. He "contends that he lacked even limited authority" because he "had to seek the approval of his supervisor, the executive director, before taking most actions." Id. For example, before entering into relationships with vendors, Raffe consulted with the Chapter's Board of Directors. See Raffe Aff. ¶ 169. When revising and formulating the Chapter's disaster response policies, Raffe was a part of a three-person team. See id. ¶ 125. Before issuing public announcements or speaking to the media, he had to seek clearance from the Chapter's Executive Director or Human Resources Director. See id. ¶ 166. Raffe also consulted with senior staff before committing volunteers to raise community awareness or to recruit other volunteers, and Raffe consulted with senior staff before deciding where to deliver presentations, before coordinating and overseeing events, and before paying for and marketing the events. See id. ¶ 186.

The fact that Raffe did not have sole or final authority to make decisions does not disqualify him from satisfying the conditions necessary for the administrative exemption.  Under the regulations,

> 'discretion and independent judgment' does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review.  The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action.  The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment.

29 C.F.R. § 541.202(c).

Accordingly, Defendants have met their burden of showing that Raffe's primary duties included the exercise of discretion and independent judgment with respect to matters of significance and that no reasonable jury could find otherwise. Raffe has failed to raise a genuine issue of material fact sufficient to defeat summary judgment as to this third and final condition of the of the administrative exemption to FLSA's overtime requirement.  As such, Defendants' motion for summary judgment as to Raffe's claim for overtime pay pursuant to the Federal Labor Standards Act is granted, and this claim is dismissed.

### *IV.  Conclusion*

In accordance with the foregoing discussion, it is hereby ORDERED that the motion for summary judgment by defendants, American National Red Cross, American Red Cross of Tompkins County, and Jennifer Yarbrough against plaintiff, Michael J. Raffe, see Dkt. No. 38, is GRANTED in part and DENIED in

part as follows:  The motion is GRANTED as to plaintiff's claim of age discrimination under New York Human Rights Law § 296; plaintiff's claim for "benefits or wage supplements" under New York Labor Law § 198-c; and plaintiff's claim for overtime pay under the Federal Labor Standards Act; and the motion is DENIED as to plaintiff's claims arising under New York Labor Law §§ 191 and 195.  Accordingly, it is

ORDERED that plaintiff's claims under New York Human Rights Law § 296, New York Labor Law § 198-c, and the Federal Labor Standards Act are DISMISSED; and that plaintiff's claims arising under New York Labor Law §§ 191 and 195 remain to be resolved at trial.

The Clerk of the Court is directed to terminate Lauren Signer as a plaintiff in this action.


IT IS SO ORDERED.


DATED:     November 30, 2011
           Syracuse, New York



Neal P. McCurn
Senior  U.S. District Judge